## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

IN RE:                                              CASE NO.: 3:23-bk-01820-BAJ
                                                                    CHAPTER 11

**Alrod Logistics, Inc.,**

     **Debtor,**

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY
### (1492 Belleshore Circle, Jacksonville, Florida 32218)

Secured Creditor, SELENE FINANCE, LP, by and through the undersigned counsel, hereby moves this Court, pursuant to 11 U.S.C. § 362(d), for a modification of the automatic stay provisions for cause, and in support states the following:

1. Debtor(s), Alrod Logistics, Inc. filed a voluntary petition pursuant to Chapter 11 of the United States Bankruptcy Code on August 3, 2023.

2. Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 362(d), Fed. R. Bankr. P. 4001(a), and all other applicable rules and statutes affecting the jurisdiction of the Bankruptcy Courts generally.

3. Secured Creditor hereby waives the requirements of 11 U.S.C. § 362(e). The automatic stay of any act against property of the estate under § 362(a) shall continue until this Court orders or the stay is otherwise terminated by operation of law.

4. On August 26, 2022, Alejandro A. Echeverria executed and delivered a Promissory Note ("Note") and a Mortgage ("Mortgage") securing payment of the Note in the amount of $373,000.00 to Contour Mortgage Corporation, a Delaware Corporation. The Mortgage was recorded on August 31, 2022, in Book 20417, at Page 1820, of the Public Records of

Duval County, Florida.  The loan was transferred to Secured Creditor. True and accurate copies of documents establishing a perfected security interest and ability to enforce the terms of the Note are attached hereto as Composite Exhibit "A."  The documents include copies of the Note with any required indorsements, Recorded Mortgage, Assignment(s) of Mortgage, and any other applicable documentation supporting the right to seek a lift of the automatic stay and foreclose, if necessary.

5.  The mortgage provides Secured Creditor a lien on the real property located at 1492 Belleshore Circle, Jacksonville, Florida 32218, in Duval County (the "Property" or "collateral" ) and legally described as stated in the mortgage attached in Composite Exhibit "A."

6.  The terms of the aforementioned Note and Mortgage have been in default, and remain in default, since January 1, 2025. As of July 2, 2025, the principal amount of $361,032.78, plus other fees and costs advanced by the mortgagee pursuant to the loan documents was due to the Secured Creditor.

7.  The Debtor filed their bankruptcy case stating that the beforementioned Property was their primary address, however, Debtor has no ownership interest in the property, but does appear to have a possessory interest.

8.  The appraised value of the Property is $252,583.00.  See Exhibit "B" which is attached hereto and permissible as a property valuation under Fed. R. Evid. 803(8).

9.  Secured Creditor's security interest in the subject property is being significantly jeopardized by Debtor(s)' failure to comply with the terms of the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such interest. Secured Creditor has no protection against the erosion of its collateral position and no other

form of adequate protection is provided.

10. If Secured Creditor is not permitted to enforce its security interest in the Property or be provided with adequate protection, it will suffer irreparable injury, loss, and damage.

11. Secured Creditor respectfully requests the Court grant it relief from the Automatic Stay in this cause pursuant to §362(d)(1) of the Bankruptcy Code, for cause, namely the lack of adequate protection to Secured Creditor for its interest in the above stated collateral.  The value of the collateral is insufficient in and of itself to provide adequate protection which the Bankruptcy Code requires to be provided to the Secured Creditor. Secured Creditor additionally seeks relief from the Automatic Stay pursuant to §362(d)(2) of the Bankruptcy Code, as the collateral is unnecessary to an effective reorganization of the Debtor's assets.

12. Once the stay is terminated, the Debtor will have minimal motivation to insure, preserve, or protect the collateral; therefore, Secured Creditor requests that the Court waive the 14-day stay period imposed by Fed.R.Bankr.P. 4001(a)(4).

13. Secured Creditor has incurred court costs and attorney's fees in this proceeding and will incur additional fees, costs and expenses in foreclosing the Mortgage and in preserving and protecting the Property, all of which additional sums are secured by the lien of the mortgage.  Secured Creditor seeks an award of its reasonable attorneys' fees and costs, or alternatively, leave to seek recovery of its reasonable attorneys' fees and costs in any pending or subsequent foreclosure proceeding.

14. A Proposed Order accompanies this Motion.  See Exhibit "C" attached hereto.

**WHEREFORE**, Secured Creditor, prays this Honorable Court enter an order modifying the automatic stay under 11 U.S.C. § 362(d) to permit Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the collateral described herein, to gain

possession of said collateral, to waive the 14-day stay imposed by Fed.R.Bankr.P. 4001(a)(4), to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding, and to any such further relief as this Honorable Court deems just and appropriate.

Robertson, Anschutz, Schneid, Crane & Partners, PLLC
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909
By: /s/ Travis Bailey
Travis Bailey, Esq.
Florida Bar No. 121775
Email: trbailey@raslg.com

**I HEREBY CERTIFY** that on July 15, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via CM/ECF or United States Mail to the following parties:

Alrod Logistics, Inc.
1492 Bellshore Circle
Jacksonville, FL 32218

Bryan K. Mickler
Mickler & Mickler
5452 Arlington Expressway
Jacksonville, FL 32211

Robert Altman
PO Box 922
Palatka, FL 32178-0922

United States Trustee - JAX 11
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

Scott E Bomkamp
DOJ-Ust

United States Trustee
400 W. Washington St.
Ste 1100
Orlando, FL 32801

All parties on the attached section 1007(d) mailing matrix.

<div style="margin-left: 40%;">

Robertson, Anschutz, Schneid, Crane &
Partners, PLLC
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909
By: /s/ Travis Bailey
Travis Bailey, Esq.
Florida Bar No. 121775
Email: trbailey@raslg.com

</div>

Label Matrix for local noticing
113A-3
Case 3:23-bk-01820-BAJ
Middle District of Florida
Jacksonville
Tue Jul 15 10:10:13 EDT 2025

AMERIS BANK
c/o Robert George
50 N Laura St., Ste 1200
Jacksonville, FL 32202-3670

Ally Bank
P.O. Box 5703
Clearwater, FL 33758-5703

Ally Bank, c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Alrod Logistics, Inc.
1492 Bellshore Circle
Jacksonville, FL 32218-5306

AmeriCredit Financial Services, Inc. DBA GM
P O Box 183853
Arlington, TX 76096-3853

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

Amerifactors Financial Group, LLC
AmeriFactors Financial Group, LLC
1170 Celebration Blvd., Ste. 100
Celebration, FL 34747-4604

Civista Leasing & Finance
c/o Megan Andrews
680 Andersen Dr., Suite 505
Pittsburg, PA 15220-2759

Envirowaste Services Group, Inc.
c/o Andrew R. Herron, Esq.
Homer Bonner Jacobs Ortiz, P.A.
1441 Brickell Ave., Suite 1200
Miami, FL 33131-3445

Flotech Environmental, LLC
301 East Pine Street
Suite 1400
Orlado, FL 32801-2741

Ford Motor Credit Company LLC
c/o Andrew W Houchins
Post Office box 3146
Orlando, FL 32802-3146

Ford Motor Credit Company, LLC
4515 N. Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Ford Motor Credit Company, LLC c/o AIS Portf
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Ford Motor Credit Company, LLC, c/o AIS Port
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Kapitus Servicing, Inc.
c/o J. Ryan Yant
Carlton Fields, P.A.
P.O. Box 3239
Tampa, FL 33601-3239

Midland States Bank
c/o Lorium Law
101 NE Third Avenue
Suite 1800
Ft. Lauderdale, FL 33301 United States 33301-1252

Nationwide Mutual Insurance Company
c/o Paskert Divers Thompson
100 North Tampa Street
Suite 3700
Tampa, FL 33602-5835

Omega Liner Company, Inc.
c/o Ryan E. Davis, Esq.
Winderweedle, Haines, Ward & Woodman, PA
329 Park Avenue North, Second Floor
Winter Park, FL 32789-7421

Vision Financial, Now Civista Bank
c/o Nicole Mariani Noel
P.O. Box 800
Tampa, FL 33601-0800

Acme Barricades
9800 Normandy Blvd
Jacksonville, FL 32221-2038

Alex Echeverria
1492 Bellshore Cir.
Jacksonville, FL 32218-5306

Ally Bank
AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Ally Financial
P.O. Box 380902
Minneapolis, MN 55438-0902

Alta Equipment Company
8750 Philips Hwy
Jacksonville, FL 32256-8215

(p)AMERICREDIT FINANCIAL SERVICS DBA GM FINAN
PO BOX 183853
ARLINGTON TX 76096-3853

AmeriFactors Financial Group, LLC
c/o Angelica Fiorentino, Esq.
1170 Celebration Blvd., Ste. 100
Celebration, FL 34747-4604

Amerifactors Financial Group, LLC
P.O. Box 628328
Orlando, FL 32862-8328

Ameris Bank
P.O. Box 105075
Atlanta, GA 30348-5075

Ameris Bank
c/o Debbie Riner, VP
PO Box 870
Vidalia, GA 30475-0870

Barbara L Farley, Esquire
6975 Upper York Road
New Hope, PA 18938-9511

Beverly Bank & Trust dba Wintrust Specialty
2050 Main Street, Suite 230
Irvine, CA 92614-8264

CEMEX
10100 Katy Freeway, Suite 300.
Houston, TX 77043-5267

Capital One N.A.
by American InfoSource as agent
PO Box 71083
Charlotte, NC  28272-1083

Cecil W. Powell Company
219 N. Newman St.
Jacksonville, FL 32202-3221

Civil Engineered Maintenance
1911 Blue River Rd.
Holiday, FL 34691-7849

Civista Leasing & Finance
680 Andersen Dr., Suite 505
Pittsburg, PA  15220
c/o Megan Andrews 15220-2759

Contech Engineered Solutions
5 Concourse Pkwy, Ste 1900
Atlanta, GA 30328-6111

Contech Engineered Solutions
9100 Centre Pointe Drive
West Chester, OH 45069-4846

County Materials Corporation
25750 County Rd 561
Astatula, FL 34705-9202

Cubesmart Rentals
5 Old Lancaster Rd
Malvern, PA 19355-2132

Duval County Tax Collector
231 Forsyth St.  #130
Jacksonville FL 32202-3380

E Advance Services/Canacap
C/O CORPORATION SERVICE COMPANY
80 State St.
Albany, NY 12207-2541

FLOTECH ENVIRONMENTAL
C/O GRAY ROBINSON
310 EAST PINE STREET
SUITE 1400
ORLANDO FL 32801

FLOTECH ENVIRONMENTAL
C/O GrayRobinson
310 East Pine Street
Suite 1400
Orlando, FL 32801

First Commonwealth Equipment Finance
6975 Upper York Road
New Hope, PA 18938-9511

Florida Department of Revenue
P.O. Box 6668
Tallahassee, FL 32314-6668

Florida Department of Transportation
c/o Office of General Counsel
605 Suwannee St. M/S 58
Tallahassee, FL 32399-0458

Florida Dept. of Revenue
Bankruptcy Unit
P.O. Box 6668
Tallahassee, FL 32314-6668

Flotech Environmental, LLC
301 E. Pine Street
Orlando, FL 32801-2724

Ford Motor Credit Co., LLC
1 American Rd
Dearborn, MI 48126-2701

Ford Motor Credit Company LLC
c/o Andrew Houchins
PO Box 3146
Orlando, FL 32802-3146

Ford Motor Credit Company LLC c/o AIS Portfo
4515 N. Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Ford Motor Credit Company, LLC
AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Fox Capital Group, Inc.
140 Broadway Fl 46
New York, NY 10005-1155

GM Financial
4001 Embarcadero Dr
Arlington, TX 76014-4106

Gadi Dotz (Gene Rosen's Law Firm – A Pr
Gene Rosen's Law Firm – A Professio
200 Garden City Plaza, Suite 405
Garden City, NY 11530-3338

GapVax
575 Central Ave.
Johnstown, PA 15902-2600

Garrett Sod Service, LLC
8435 Florence Cove Rd
Saint Augustine, FL 32092-1901

Hoyer's Express Tree Service, LLC
14798 SW 151st Ave
Brooker, FL 32622-2505

Hoyer's Express Tree Service, LLC
14798 SW 151st Avenue
303 SR 26
Brooker, FL 32622-303

Impreg
8000 Whitepine Road
Richmond, VA 23237-2263

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
PO Box 7346
Philadelphia, PA  19101-7346

Kapitus Funding
120 W 45th St
New York, NY 10036-4195

Kapitus Servicing, Inc.
120 W. 45th Street, 4th Floor
Attn: Carolina Baez
New York, NY 10036-4041

LG Funding
1218 Union St
Brooklyn, NY 11225-1512

LG Funding LLC
Gene Rosen's Law Firm - A Professio
200 Garden City Plaza, Suite 405
Garden City, NY 11530-3338

Law Offices of Mickler & Mickler, LLP
5452 Arlington Expy.
Jacksonville, FL 32211-6860

Lewis Rice LLC.
c/o Brock and Scott, PLLC
Attorneys at Law
3825 Forrestgate Dr.
Winston-Salem, NC 27103-2930

(p)LIBERTAS FUNDING LLC
411 WEST PUTNAM ST
SUITE 220
GREENWICH CT 06830-6295

Liquidbee LLC
55 Broad Street, 9th Floor
New York, NY 10004-2001

MCA Resolve, LLC
220 Congress Park Dr, STE 215
Delray Beach, FL 33445-4605

Manatee County Utilities
1112 Manatee Avenue West
Bradenton, FL 34205-7804

Mayer Construction Supply, LLC.
10 Eastgate Dr,
Brunswick, GA 31525-4851

Midland States Bank
c/o Lorium Law
101 NE Third Avenue, Suite 1800
Ft. Lauderdale, FL 33301-1252

Murray Ford
13447 US HWY 301
Starke, FL 32091-7803

Nationwide Mutual Insurance Co.
Attn: John Tyszka
Po Box 182068
Columbus, OH 43218-2068

Nationwide Mutual Insurance Company
c/o Paskert Divers Thompson
Matthew Davis, Esq.
100 North Tampa Street, Suite 3700
Tampa, FL 33602-5835

Omega Liner Company
515 Noid Road
Canton, SD 57013-9369

Omega Liner Company, Inc.
Attn:  Bob Fossum
515 Noid Road
Canton, SD 57013-9369

Omega Liner Company, Inc.
c/o Ryan E. Davis, Esq.
Winderweedle, Haines, Ward & Woodman, PA
329 N. Park Avenue, Second Floor
Winter Park, FL 32789-7408

Preferred Materials
6699 Colray Ct
Jacksonville, FL 32258-2411

Prokasro Services
13685 E Davies Pl,
Englewood, CO 80112-4004

Quicksilver Capital
181 S Franklin Ave
Valley Stream, NY 11581-1138

RTR Recovery, LLC
370 Lexington Avenue, Suite 801
New York, NY 10017-6510

RedStone Underwriters
15301 Dallas Parkway Suite #500
Addison, TX 75001-6707

Robert B. George
Ameris Bank, c/o Debbie Riner, VP
PO Box 870
Vidalia, GA 30475-0870

Sarah E. Warren, Assistant County Attorney
1112 Manatee Avenue West, Suite 969
Bradenton, FL 34205-7804

Secretary of the Treasury
15th & Pennsylvania Ave., NW
Washington, DC 20220-0001

Shanna M. Kaminski
P.O. Box 247
Grass Lake, MI 49240-0247

Sumitomo Mitsui Finance and Leasing Co. Ltd.
c/o Kye Law Group, P.C.
201 Old Country Road
Suite 120
Melville, NY 11747-2725

(p)SUNBELT RENTALS INC
ATTN BETH MONTGOMERY
1799 INNOVATION POINT
FORT MILL SC 29715-4556

Sunbelt Rentals, Inc.
c/o Quinn Murphy
600 Washington Ave., 15th Floor
St. Louis, MO 63101-1361

U. S. Small Business Administration
CESC - SBA
14925 Kingsport Road
Fort Worth, TX 76155-2243

U.S. Bank NA dba Elan Financial Services
Bankruptcy Department
PO Box 108
Saint Louis MO 63166-0108

U.S. Securities & Exchange Commission
Office of Reorganization
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA 30326-1382

United Rentals (North America), Inc.
100 FIRST STAMFORD PLACE #700
Stamford, CT 06902-9200

United States Attorney
300 North Hogan St Suite 700
Jacksonville, FL 32202-4204

United States Trustee - JAX 11
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

United States of America
c/o Small Business Administration
2 NORTH 20TH ST.  #320
Birmingham, AL 35203-4002

Vision Financial Group Inc.
615 Iron City Drive
Pittsburgh, PA 15205-4321

Vision Financial Group, Inc.
c/o Brock & Scott PLLC
c/o Teresa M Hair
3825 Forrestgate Dr.
Winston-Salem, NC 27103-2930

Vortex Technology
18150 Imperial Valley Drive
Houston, TX 77060-6246

WG Johnson and Son
2430 NW 73rd Pl,
Gainesville, FL 32653-1214

White Cap
5409 Broadway Ave
Jacksonville, FL 32254-2959

Bryan K. Mickler
Mickler & Mickler
5452 Arlington Expressway
Jacksonville, FL 32211-6860

Eartha Johnson Williams
c/o Thames   Markey
50 North Laura Street, Suite 1600
Jacksonville, FL 32202-3614

Robert Altman
PO Box 922
Palatka, FL 32178-0922

William G. Haeberle
4446-I A Hendricks Ave Ste. 245
Jacksonville, FL 32207

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

AmeriCredit Financial Services, Inc.
dba GM Financial
P O Box 183853
Arlington, TX 76096

Internal Revenue Service
Attn: Bankruptcy
400 W. Bay Street
Jacksonville, FL 32202

Libertas Funding
411 West Putnam Avenue Suite 220
Greenwich, CT 06830

Sunbelt Rentals
2341 Deerfield Drive,
Fort Mill, SC 29715

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Americredit Financial Services, Inc.
c/o Gerard M Kouri Jr PA
5311 King Arthur Avenue
Davie33330-4343 United States

(u)BEVERLY BANK & TRUST DBA WINTRUST SPECIALI

(u)Vision Financial Group, Inc.

(d)AMERIS BANK
c/o Robert George
50 N. Laura St., Ste. 1200
Jacksonville, FL 32202-3670

(d)Ally Bank c/o AIS Portfolio Services, LLC
4515 N. Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

(d)AmeriCredit Financial Services, Inc. dba G
P O Box 183853
Arlington, TX 76096-3853

(d)American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

(d)Ford Motor Credit Company, LLC
4515 N. Santa Fe Ave.Dept. APS
Oklahoma City, OK 73118-7901

(d)Kapitus Servicing, Inc.
c/o J. Ryan Yant
Carlton Fields, P.A.
P.O. Box 3239
Tampa, FL  33601-3239

(u)Vision

End of Label Matrix
Mailable recipients    109
Bypassed recipients     10
Total                  119

# COMPOSITE EXHIBIT "A"

MIN: ▮▮▮▮▮▮▮▮   LOAN #: ▮▮▮▮▮▮▮▮

# NOTE

August 26, 2022                    Garden City,                    New York
[Date]                             [City]                          [State]

1492 BELLESHORE CIR, JACKSONVILLE, FL 32216-5306
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S.  **$373,000.00**      (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  **Contour Mortgage Corporation, a Delaware Corporation.**

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of  **5.375 %.**
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in
Section 6(B) of this Note.

**3.   PAYMENTS**
   **(A) Time and Place of Payments**
   I will pay principal and interest by making a payment every month.
   I will make my monthly payment on the  1st     day of each month beginning on  **October 1, 2022.**      I will make
these payments every month until I have paid all of the principal and interest and any other charges described below
that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied
to interest before Principal. If, on  **September 1, 2052,**      I still owe amounts under this Note, I will pay those amounts
in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at  **990 Stewart Avenue, Suite 660**
                                      **Garden City , NY 11530**
or at a different place if required by the Note Holder.
   **(B) Amount of Monthly Payments**
   My monthly payment will be in the amount of U.S. **$2,088.69.**

**4.   BORROWER'S RIGHT TO PREPAY**
   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate
a payment as a Prepayment if I have not made all the monthly payments due under this Note.
   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use
my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount
of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**
   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest
or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any
such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any
sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to
make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces
Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**
   **(A) Late Charge for Overdue Payments**
   If the Note Holder has not received the full amount of any monthly payment by the end of  15    calendar days after
the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  **5.000 %**     of my overdue
payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   **(B) Default**
   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
   **(C) Notice of Default**
   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount
by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been
paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice
is mailed to me or delivered by other means.

**LOAN #:** ▮▮▮▮▮▮

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11.  DOCUMENTARY TAX**
The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
**ALEJANDRO A. ECHEVERRIA**

**Lender: Contour Mortgage Corporation**
**NMLS ID: 34384**
**Loan Originator: Jonathan Paul Storck**
**NMLS ID: 1968108**

Without Recourse
Pay to the Order of



Karen Casals
Quality Control Anaylst
Customers Bank
As Power of Attorney For
Contour Mortgage Corporation
A Delaware Corporation

**JP Morgan Chase Bank, N.A.**

**[Sign Original Only]**

FLORIDA FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3210 1/01
ICE Mortgage Technology, Inc.                                Page 2 of 2
F3200FLN  0221
F3200FLN (CLS)
08/24/2022 05:40 AM PST

Pay to the Order of:

Without Recourse
JPMorgan Chase Bank, N.A.

By:

Nina Furlow/Authorized Officer

Doc # 2022226069, OR BK 204 PA, Page 1020, Number Pages 11,
Recorded 08/31/2022 10:51 AM, JODY PHILLIPS CLERK CIRCUIT COURT DUVAL COUNTY
RECORDING $95.00 MORTGAGE DOC ST $1305.50' INTANGIBLE TAX $746.00

Echeverria                           Chase

When recorded, return to:
Contour Mortgage Corporation
Final Document Department
990 Stewart Avenue, Suite 660
Garden City, NY 11530

This document was prepared by:
Contour Mortgage Corporation
990 Stewart Avenue Suite 660
Garden City, NY 11530
516-385-6900

Title Order No.:

LOAN #:
────────────── [Space Above This Line for Recording Data] ──────────────

## MORTGAGE

MIN
MERS PHONE #: 1-888-679-6377

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13,
18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated August 26, 2022,        together with all Riders to
this document.
(B) "Borrower" is  ALEJANDRO A. ECHEVERRIA.

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument.
MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is   Contour Mortgage Corporation.

Lender is  a Delaware Corporation,                                          organized and existing
under the laws of  New York.
Lender's address is  990 Stewart Avenue, Suite 660, Garden City , NY 11530.

(E) "Note" means the promissory note signed by Borrower and dated August 26, 2022.        The Note states that
Borrower owes Lender  THREE HUNDRED SEVENTY THREE THOUSAND AND NO/100**********************
*********************************************** Dollars (U.S. $373,000.00        )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
September 1, 2052.

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3010 1/01
ICE Mortgage Technology, Inc.                              Page 1 of 10

Initials: _____
FLEDEED  1120
FLEDEED (CLS)
08/24/2022 05:49 AM PST



When recorded, return to:
Contour Mortgage Corporation
Final Document Department
990 Stewart Avenue, Suite 660
Garden City, NY 11530

This document was prepared by:
Contour Mortgage Corporation
990 Stewart Avenue Suite 660
Garden City, NY 11530
516-385-6900

This Document Has Been E-Recorded
by Mason Title & Escrow Company

Title Order No.: ███████████

LOAN #: ███████████

──────────────────── [Space Above This Line for Recording Data] ────────────────────

# MORTGAGE

| MIN | ████████████████ |
| --- | --- |

**MERS PHONE #: 1-888-679-6377**

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated **August 26, 2022,**      together with all Riders to this document.
**(B) "Borrower"** is  ALEJANDRO A. ECHEVERRIA.

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is  **Contour Mortgage Corporation.**

Lender is  **a Delaware Corporation,**                                            organized and existing
under the laws of  **New York.**
Lender's address is **990 Stewart Avenue, Suite 660, Garden City , NY 11530.**

**(E) "Note"** means the promissory note signed by Borrower and dated **August 26, 2022.**      The Note states that
Borrower owes Lender  **THREE HUNDRED SEVENTY THREE THOUSAND AND NO/100* * * * * * * * * * * * * * * * * ***
** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *** Dollars (U.S. **$373,000.00**      )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
**September 1, 2052.**

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3010 1/01
ICE Mortgage Technology, Inc.                              Page 1 of 10

Initials: _A.A.E._
FLEDEED   1120
FLEDEED (CLS)
08/24/2022 05:40 AM PST



**LOAN #:** <span style="background:black">████</span>

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider
☐ Balloon Rider     ☐ Planned Unit Development Rider     ☐ V.A. Rider
☐ 1-4 Family Rider     ☐ Biweekly Payment Rider
☐ Other(s) [specify]

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County     of Duval

[Type of Recording Jurisdiction]         [Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**

which currently has the address of   **1492 BELLESHORE CIR, JACKSONVILLE,**

[Street] [City]

Florida   **32218-5306**      ("Property Address"):
    [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.             **Page 2 of 10**

Initials: 

FLEDEED  1120
FLEDEED (CLS)
08/24/2022 05:40 AM PST

**LOAN #:** ⬛⬛⬛⬛⬛⬛

Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay

Initials: _FLE_

FLEDEED  1120
FLEDEED (CLS)
08/24/2022 05:40 AM PST

**LOAN #:** 

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                                    Page 5 of 10

Initials: _____

FLEDEED   1120
FLEDEED (CLS)
08/24/2022 05:40 AM PST

coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either

Initials: _AAE_

**LOAN #:** ▮▮▮▮▮▮▮▮

to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

Initials: ▮▮▮▮▮

FLEDEED   1120
FLEDEED (CLS)
08/24/2022 05:40 AM PST

LOAN #: ▮▮▮▮▮▮▮

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action. .

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.          .

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3010 1/01
ICE Mortgage Technology, Inc.                                      Page 8 of 10

Initials: _____

FLDEED   1120
FLDEED (CLS)
08/24/2022 06:40 AM PST

**LOAN #:** ▮▮▮▮▮▮

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____    8/26/22    _____ (Seal)
ALEJANDRO A. ECHEVERRIA                                              DATE
1492 Belleshore Cir
Jacksonville, FL 32218

Witnesses:
Signed, sealed and delivered in the presence of:

_____

Printed Name

_____

Printed Name

FLEDEED   1120
FLEDEED (CLS)
08/24/2022 05:40 AM PST

LOAN #: ▮▮▮

State of FLORIDA

County of Duval

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 26th day of AUGUST, 2022 by ALEJANDRO A. ECHEVERRIA, who is/are personally known to me or who has/have produced _Drivers  License_ as identification.

_____
Signature

Denise Larkin
Printed Name

Notary Public
Title or Rank

HH209454
Serial Number (if any)

DENISE LARKIN
Notary Public - State of Florida
Commission # HH 209454
My Comm. Expires Apr 12, 2026
Bonded through National Notary Assn.

Lender: **Contour Mortgage Corporation**
NMLS ID: ▮▮▮
Loan Originator: **Jonathan Paul Storck**
NMLS ID: ▮▮▮

Initials: _____
FLEDEED  1120
FLEDEED (CLS)
09/24/2022 05:40 AM PST

## Appendix A

A TRACT OF LAND, LOCATED IN GOVERNMENT LOTS, SECTION 14, TOWNSHIP 1 SOUTH, RANGE 26 EAST, DUVAL COUNTY, FLORIDA, SAID TRACT ALSO BEING KNOWN AS LOT 6, BLOCK 5, OF A PROPOSED SUBDIVISION OF SHOREWOOD, UNIT THREE, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:
FOR A POINT OF REFERENCE, COMMENCE AT THE EXTREME SOUTHERLY CORNER OF LOT 11, BLOCK 4, SHOREWOOD, UNIT TWO, ACCORDING TO THE PLAT RECORDED IN THE PUBLIC RECORDS OF SAID COUNTY, IN PLAT BOOK 33, PAGE 60, AND RUN NORTH 48 DEGREES 45 MINUTES WEST ALONG THE NORTHEASTERLY RIGHT OF WAY LINE OF BELLSHORE CIRCLE (FORMERLY TUCKERSON CIRCLE, AS SHOWN ON SAID PLAT) A DISTANCE OF 85.0 FEET TO A POINT; RUN THENCE SOUTH 41 DEGREES 15 MINUTES WEST, ACROSS THE RIGHT OF WAY OF SAID BELLSHORE CIRCLE, A DISTANCE OF 60.0 FEET TO A CONCRETE MONUMENT LOCATED AT A POINT OF CURVATURE IN THE SOUTHWESTERLY RIGHT OF WAY LINE OF SAID BELLSHORE CIRCLE; RUN THENCE NORTHWESTERLY, ALONG THE ARC OF A CURVE, CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 106.27 FEET, A CHORD DISTANCE OF 17.69 FEET TO A POINT OF BEGINNING, THE BEARING OF THE AFOREMENTIONED CHORD BEING NORTH 43 DEGREES 58 MINUTES 35 SECONDS WEST. FROM THE POINT OF BEGINNING THUS DESCRIBED, RUN SOUTHEASTERLY ALONG THE ARC OF SAID CURVE, A CHORD DISTANCE OF 17.69 FEET TO THE AFOREMENTIONED CONCRETE MONUMENT, THE BEARING OF THE AFOREMENTIONED CHORD BEING SOUTH 43 DEGREES 58 MINUTES 35 SECONDS EAST, RUN THENCE SOUTH 48 DEGREES 45 MINUTES EAST, A DISTANCE OF 70.31 FEET TO A POINT; RUN THENCE SOUTH 41 DEGREES 15 MINUTES WEST, A DISTANCE OF 240 FEET MORE OR LESS TO THE WATERS OF TROUT RIVER; RUN THENCE NORTHWESTERLY, ALONG SAID WATERS, FOLLOWING THE MEANDERINGS OF SAME, A DISTANCE OF 122 FEET, MORE OR LESS, TO A POINT WHICH BEARS SOUTH 50 DEGREES 44 MINUTES 55 SECONDS WEST FROM THE POINT OF BEGINNING; RUN THENCE NORTH 50 DEGREES 44 MINUTES 55 SECONDS EAST A DISTANCE OF 244 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

Commonly known as: 1492 Belleshore Circle, Jacksonville, FL 32218

Parcel Number: ▮▮▮▮▮▮▮

Borrower Last Name: Echeverria

Doc # 2023198313, OR BK 20820 Page 1424, Number Pages: 2,
Recorded 09/25/2023 09:28 BY JODY PHILLIPS CLERK CIRCUIT COURT DUVAL COUNTY
RECORDING $18.50

Case 3:23-bk-01820-BAJ   Doc 345   Filed 07/15/25   Page 26 of 35

**Record and Return To:**
JPMorganChase - eP4
700 Kansas Lane
MC 8000
Monroe, LA 71203
**Prepared By:**
**Anjo Panagsagan**
JPMorganChase - eP4
700 Kansas Lane
MC 8000
Monroe, LA 71203
(318)432-6157

MIN:
MERS Phone #: **(888) 679-6377**

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **Mortgage Electronic Registration Systems, Inc., as Mortgagee, as Nominee for CONTOUR MORTGAGE CORPORATION, its Successors and Assigns , P.O. Box 2026**, Flint, MI 48501-2026, by these presents does convey, assign, transfer and set over to:
**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, 700 KANSAS LANE MC 8000, MONROE, LA 71203**, the described Mortgage, with all interest, all liens, and any rights due or to become due thereon.
Original Mortgagor: **ALEJANDRO A ECHEVERRIA**
Original Mortgagee: **Mortgage Electronic Registration Systems, Inc., as Mortgagee, as Nominee for CONTOUR MORTGAGE CORPORATION, its Successors and Assigns**

Dated: **08/26/2022** Recorded: **08/31/2022** Instrument: **2022226069** Book: **20417** Page: **1820** in Duval County, FL Loan Amount: **$373,000.00**
Property Address: **1492 BELLESHORE CIR, JACKSONVILLE, FL 32218-5306**
Parcel Tax ID:
Legal: **SEE EXHIBIT A ATTACHED**

Date: _8-22-23_ .

**Mortgage Electronic Registration Systems, Inc., as Mortgagee, as Nominee for CONTOUR MORTGAGE CORPORATION, its Successors and Assigns**

By:

Name: _QUATEADRA SMITH_

Title: _Assistant Secretary_

Signed, sealed, and delivered
in the presence of:

Witness: _Mary C Whitfield_

Witness: **David Lawson**

STATE OF **Louisiana** } s.s.
PARISH OF **Ouachita**

On _8-22-23_ , before me appeared **QUATEADRA SMITH** , to me personally known, who
did say that s/he/they (are) the **Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc., as Mortgagee, as Nominee for CONTOUR MORTGAGE CORPORATION, its Successors and Assigns** and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that s/he/they acknowledged the instrument to be the free act and deed of the corporation (or association).

Witness my hand and official seal.

Notary Public: **Yolanda A. Diaz**

My Commission Expires: **LIFETIME**

Commission #: **87401**

Yolanda A. Diaz
State of Louisiana
Lifetime Commission
Notary Public ID # 87401

Loan #:

Page 1 of 1

EXHIBIT A – LEGAL DESCRIPTION

A TRACT OF LAND, LOCATED IN GOVERNMENT LOTS, SECTION 14, TOWNSHIP 1 SOUTH, RANGE 26 EAST, DUVAL COUNTY, FLORIDA, SAID TRACT ALSO BEING KNOWN AS LOT 6, BLOCK 5, OF A PROPOSED SUBDIVISION OF SHOREWOOD, UNIT THREE, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:
FOR A POINT OF REFERENCE, COMMENCE AT THE EXTREME SOUTHERLY CORNER OF LOT 11, BLOCK 4, SHOREWOOD, UNIT TWO, ACCORDING TO THE PLAT RECORDED IN THE PUBLIC RECORDS OF SAID COUNTY, IN PLAT BOOK 33, PAGE 60, AND RUN NORTH 48 DEGREES 45 MINUTES WEST ALONG THE NORTHEASTERLY RIGHT OF WAY LINE OF BELLSHORE CIRCLE (FORMERLY TUCKERSON CIRCLE, AS SHOWN ON SAID PLAT) A DISTANCE OF 85.0 FEET TO A POINT; RUN THENCE SOUTH 41 DEGREES 15 MINUTES WEST, ACROSS THE RIGHT OF WAY OF SAID BELLSHORE CIRCLE, A DISTANCE OF 60.0 FEET TO A CONCRETE MONUMENT LOCATED AT A POINT OF CURVATURE IN THE SOUTHWESTERLY RIGHT OF WAY LINE OF SAID BELLSHORE CIRCLE; RUN THENCE NORTHWESTERLY, ALONG THE ARC OF A CURVE, CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 106.27 FEET, A CHORD DISTANCE OF 17.69 FEET TO A POINT OF BEGINNING, THE BEARING OF THE AFOREMENTIONED CHORD BEING NORTH 43 DEGREES 58 MINUTES 35 SECONDS WEST. FROM THE POINT OF BEGINNING THUS DESCRIBED, RUN SOUTHEASTERLY ALONG THE ARC OF SAID CURVE, A CHORD DISTANCE OF 17.69 FEET TO THE AFOREMENTIONED CONCRETE MONUMENT, THE BEARING OF THE AFOREMENTIONED CHORD BEING SOUTH 43 DEGREES 58 MINUTES 35 SECONDS EAST, RUN THENCE SOUTH 48 DEGREES 45 MINUTES EAST, A DISTANCE OF 70.31 FEET TO A POINT; RUN THENCE SOUTH 41 DEGREES 15 MINUTES WEST, A DISTANCE OF 240 FEET MORE OR LESS TO THE WATERS OF TROUT RIVER; RUN THENCE NORTHWESTERLY, ALONG SAID WATERS, FOLLOWING THE MEANDERINGS OF SAME, A DISTANCE OF 122 FEET, MORE OR LESS, TO A POINT WHICH BEARS SOUTH 50 DEGREES 44 MINUTES 55 SECONDS WEST FROM THE POINT OF BEGINNING; RUN THENCE NORTH 50 DEGREES 44 MINUTES 55 SECONDS EAST A DISTANCE OF 244 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

Doc # 2025131732, OR BK 21495 Page 1568, Number Pages: 1,
Recorded 06/05/2025 01:33 PM JODY PHILLIPS CLERK CIRCUIT COURT DUVAL COUNTY
RECORDING $10.00

Case 3:23-bk-01820-BAJ  Doc 345  Filed 07/15/25  Page 28 of 35

**Record and Return To:**
JPMorganChase - eP4
700 Kansas Lane
MC 8000
Monroe, LA 71203

**Prepared By:**
**MAYNIE C. VILLAFUERTE**
JPMorganChase - eP4
700 Kansas Lane
MC 8000
Monroe, LA 71203
(318)432-6157

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION , 700 KANSAS LANE MC 8000, MONROE, LA 71203,** by these presents convey, assign, transfer and set over to: **SELENE FINANCE LP, 3501 OLYMPUS BLVD SUITE 500, DALLAS, TX 75019,** the described Mortgage, with all interest, all liens, and any rights due or to become due thereon.

Original Mortgagor: **ALEJANDRO A. ECHEVERRIA**
Original Mortgagee: **Mortgage Electronic Registration Systems, Inc., as Mortgagee, as Nominee for CONTOUR MORTGAGE CORPORATION, its Successors and Assigns**
Dated: **08/26/2022** Recorded: **08/31/2022** Instrument: **2022226069** Book: **20417** Page: **1820** in **Duval** County, FL Loan Amount: **$373,000.00**
Property Address: **1492 BELLESHORE CIR, JACKSONVILLE, FL 32218**
Parcel Tax ID: ▓▓▓▓▓▓

Date: **MAY 2 1 2025**

**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**

By: _____

Name: **Latrice Bell**

Title: **Vice President-Doc Executior**

Signed, sealed, and delivered
in the presence of:

Witness: **QUATEADRA SMITH**
Address: **700 Kansas Lane MC 8000, Monroe, LA 71203**

Witness: **Eugene Campbell**
Address: **700 Kansas Lane MC 8000, Monroe, LA 71203**

STATE OF **Louisiana** } S.S.
PARISH OF **Ouachita**

On **MAY 2 1 2025** , before me appeared _____ **Latrice Bell** , to me personally known, who did say that s/he/they is (are) the **Vice President-Doc Executior** of **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION** and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that s/he/they acknowledged the instrument to be the free act and deed of the corporation (or association).

Witness my hand and official seal.

Notary Public: **Brenda R Davis**

My Commission Expires: **LIFETIME**

Commission #: **126370**

Brenda R Davis
State of Louisiana
Lifetime Commission
Notary Public ID # 126370

Loan #: ▓▓▓▓▓▓▓▓

Page 1 of 1

**EXHIBIT "B"**

**ECHEVERRIA ALEJANDRO A** 
1492 BELLESHORE CIR
JACKSONVILLE, FL 32218

**Primary Site Address**
1492 BELLESHORE CIR
Jacksonville FL 32218-

**Official Record Book/Page**
20417-01818

**Tile #**
6314

## 1492 BELLESHORE CIR

### Property Detail

| | |
|---|---|
| RE # | 020923-0050 |
| Tax District | GS |
| Property Use | 0100 Single Family |
| # of Buildings | 1 |
| Legal Desc. | For full legal description see Land & Legal section below |
| Subdivision | 00000 SECTION LAND |
| Total Area | 24322 |

The sale of this property may result in higher property taxes. For more information go to Save Our Homes and our Property Tax Estimator . 'In Progress' property values, exemptions and other supporting information on this page are part of the working tax roll and are subject to change. Certified values listed in the Value Summary are those certified in October, but may include any official changes made after certification Learn how the Property Appraiser's Office values property.

### Value Summary

| Value Description | 2024 Certified | 2025 In Progress |
|---|---|---|
| Value Method | CAMA | CAMA |
| Total Building Value | $208,940.00 | $208,411.00 |
| Extra Feature Value | $15,011.00 | $17,869.00 |
| Land Value (Market) | $166,302.00 | $170,170.00 |
| Land Value (Agric.) | $0.00 | $0.00 |
| Just (Market) Value | $390,253.00 | $396,450.00 |
| Assessed Value | $245,465.00 | $252,583.00 |
| Cap Diff/Portability Amt | $144,788.00 / $0.00 | $143,867.00 / $0.00 |
| Exemptions | $50,000.00 | See below |
| Taxable Value | $195,465.00 | See below |

### Taxable Values and Exemptions – In Progress 

If there are no exemptions applicable to a taxing authority, the Taxable Value is the same as the Assessed Value listed above in the Value Summary box.

**County/Municipal Taxable Value**

| | |
|---|---|
| Assessed Value | $252,583.00 |
| Homestead (HX) | - $25,000.00 |
| Homestead Banding 196.031(1)(b) (HB) | - $25,722.00 |
| **Taxable Value** | **$201,861.00** |

**SJRWMD/FIND Taxable Value**

| | |
|---|---|
| Assessed Value | $252,583.00 |
| Homestead (HX) | - $25,000.00 |
| Homestead Banding 196.031(1)(b) (HB) | - $25,722.00 |
| **Taxable Value** | **$201,861.00** |

**`School Taxable Value**

| | |
|---|---|
| Assessed Value | $252,583.00 |
| Homestead (HX) | - $25,000.00 |
| **Taxable Value** | **$227,583.00** |

### Sales History 

| Book/Page | Sale Date | Sale Price | Deed Instrument Type Code | Qualified/Unqualified | Vacant/Improved |
|---|---|---|---|---|---|
| 20417-01818 | 8/19/2022 | $100.00 | QC - Quit Claim | Unqualified | Improved |
| 19599-02198 | 2/22/2021 | $100.00 | MS - Miscellaneous | Unqualified | Improved |
| 11296-00872 | 7/21/2003 | $300,000.00 | WD - Warranty Deed | Unqualified | Improved |
| 06362-01754 | 6/26/1987 | $130,000.00 | WD - Warranty Deed | Unqualified | Improved |

### Extra Features 

| LN | Feature Code | Feature Description | Bldg. | Length | Width | Total Units | Value |
|---|---|---|---|---|---|---|---|
| 1 | FPMR7 | Fireplace Masonry | 1 | 0 | 0 | 1.00 | $884.00 |
| 2 | POLR3 | Pool | 1 | 0 | 0 | 1.00 | $10,710.00 |
| 3 | DLWR6 | Dock Wood Light Wgt | 1 | 0 | 0 | 954.00 | $6,275.00 |

### Land & Legal 

**Land**

| LN | Code | Use Description | Zoning Assessment | Front | Depth | Category | Land Units | Land Type | Land Value |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 0130 | RES RIVER LD 3-7 UNITS PER AC | RLD-60 | 130.00 | 228.00 | Common | 130.00 | Front Footage | $170,170.00 |

**Legal**

| LN | Legal Description |
|---|---|
| 1 | 14-1S-26E .68 |
| 2 | PT LOT 5 RECD O/R 20417-1818 |

### Buildings 

**Building 1**

Building 1 Site Address
1492 BELLESHORE CIR Unit
Jacksonville FL 32218-

| Building Type | 0101 - SFR 1 STORY |
|---|---|
| Year Built | 1970 |
| Building Value | $208,411.00 |

| Type | Gross Area | Heated Area | Effective Area |
|---|---|---|---|
| Base Area | 2449 | 2449 | 2449 |
| Finished Garage | 676 | 0 | 338 |
| Finished Open Porch | 124 | 0 | 37 |
| Total | 3249 | 2449 | 2824 |

| Element | Code | Detail |
|---|---|---|
| Exterior Wall | 20 | 20 Face Brick |
| Exterior Wall | 16 | 16 Frame Stucco |
| Roof Struct | 3 | 3 Gable or Hip |
| Roofing Cover | 3 | 3 Asph/Comp Shng |
| Interior Wall | 5 | 5 Drywall |
| Int Flooring | 14 | 14 Carpet |
| Int Flooring | 11 | 11 Cer Clay Tile |
| Heating Fuel | 4 | 4 Electric |
| Heating Type | 4 | 4 Forced-Ducted |
| Air Cond | 3 | 3 Central |

| Element | Code | Detail |
|---|---|---|



| | | |
|---|---|---|
| Stories | 1.000 | |
| Bedrooms | 3.000 | |
| Baths | 2.500 | |
| Rooms / Units | 1.000 | |

## 2024 Notice of Proposed Property Taxes Notice (TRIM Notice)

| Taxing District | Assessed Value | Exemptions | Taxable Value | Last Year | Proposed | Rolled-back |
|---|---|---|---|---|---|---|
| Gen Govt Ex B & B | $245,465.00 | $50,000.00 | $195,465.00 | $2,131.15 | $2,212.06 | $2,142.30 |
| Public Schools: By State Law | $245,465.00 | $25,000.00 | $220,465.00 | $678.98 | $681.68 | $694.24 |
| By Local Board | $245,465.00 | $25,000.00 | $220,465.00 | $479.53 | $495.61 | $487.98 |
| FL Inland Navigation Dist. | $245,465.00 | $50,000.00 | $195,465.00 | $5.42 | $5.63 | $5.20 |
| Water Mgmt Dist. SJRWMD | $245,465.00 | $50,000.00 | $195,465.00 | $33.77 | $35.05 | $32.96 |
| School Board Voted | $245,465.00 | $25,000.00 | $220,465.00 | $213.32 | $220.47 | $220.47 |
| | | | Totals | $3,542.17 | $3,650.50 | $3,583.15 |

| Description | Just Value | Assessed Value | Exemptions | Taxable Value |
|---|---|---|---|---|
| Last Year | $391,699.00 | $238,316.00 | $50,000.00 | $188,316.00 |
| Current Year | $390,253.00 | $245,465.00 | $50,000.00 | $195,465.00 |

## 2024 TRIM Property Record Card (PRC)
This PRC reflects property details and values at the time of the original mailing of the Notices of Proposed Property Taxes (TRIM Notices) in August.

### Property Record Card (PRC)
The PRC accessed below reflects property details and values at the time of Tax Roll Certification in October of the year listed.

**2024**

**2023**

**2022**

**2021**

**2020**

**2019**

**2018**

**2017**

**2016**

**2015**

**2014**

• To obtain a historic Property Record Card (PRC) from the Property Appraiser's Office, submit your request here: 

### More Information
ontact Us | Parcel Tax Record | GIS Map | Map this property on Google Maps | City Fees Record

**EXHIBIT "E"**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

IN RE:                                          CASE NO.: 3:23-bk-01820-BAJ
                                                              CHAPTER 11

**Alrod Logistics, Inc.,**

    **Debtor,**

_____/

### ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

    THIS CASE came on for hearing on _____, on SELENE FINANCE, LP's ("Secured Creditor") Motion for Relief from the Automatic Stay (Docket No.___).  The Court heard argument of the Parties and has based its decision on the record.  Accordingly, it is:

    **ORDERED:**

1. Secured Creditor's Motion for Relief from Automatic Stay is GRANTED.

2. The automatic stay imposed by 11 U.S.C. § 362 is terminated as to the Secured Creditor's interest in the following property located at 1492 Belleshore Circle, Jacksonville, Florida 32218, in Duval County, Florida, and legally described as:

<center>1</center>

A TRACT OF LAND, LOCATED IN GOVERNMENT LOTS, SECTION 14, TOWNSHIP 1 SOUTH, RANGE 26 EAST, DUVAL COUNTY, FLORIDA, SAID TRACT AALSO BEING KNOWN AS LOT 6, BLOCK 5, OF A PROPOSED SUBDIVISION OF SHOREWOOD, UNIT THREE, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: FOR A POINT OF REFERENCE, COMMENCE AT THE EXTREME SOUTHERLY CORNER OF LOT 11, BLOCK 4, SHOREWOOD, UNIT TWO, ACCORDING TO THE PLAT RECORDED IN THE PUBLIC RECORDS OF SAID COUNTY, IN PLAT BOOK 33, PAGE 60, AND RUN NORTH 48 DEGREES 45 MINUTES WEST ALONG THE NORTHEASTERLY RIGHT OF WAY LINE OF BELLSHORE CIRCLE (FORMERLY TUCKERSON CIRCLE, AS SHOWN ON SAID PLAT) A DISTANCE OF 85.0 FEET TO A POINT; RUN THENCE SOUTH 41 DEGREES 15 MINUTES WEST, ACROSS THE RIGHT OF WAY OF CURVATURE IN THE SOUTHWESTERLY RIGHT OF WAY LINE OF SAID BELLSHORE CIRCLE; RUN THENCE NORTHWESTERLY, ALONG THE ARC OF A CURVE, CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 106.27 FEET, A CHORD DISTANCE OF 17.69 FEET TO A POINT OF BEGINNING, THE BEARING OF THE AFOREMENTIONED CHORD BEING NORTH 43 DEGREES 58 MINUTES 35 SECONDS WEST. FROM THE POINT OF BEGINNINGS THUS DESCRIBED, RUN SOUTHEASTERLY ALONG THE ARC OF SAID CURVE, A CHORD DISTANCE OF 17.69 FEET TO THE A FOREMENTIONED CONCRETE MONUMENT, THE BEARING OF THE AFOREMENTIONED CHORD BEING SOUTH 43 DEGREES 58 MINUTES 35 SECONDS EAST, RUN THENCE SOUTH 48 DEGREES 45 MINUTES EAST, A DISTANCE OF 70.31 FEET TO A POINT; RUN THENCE SOUTH 41 DEGREES 15 MINUTES WEST, A DISTANCE OF 240 FEET

2

> MORE OR LESS TO THE WATERS OF TROUT RIVER; RUN THENCE NORTHWESTERLY, ALONG SAID WATERS, FOLLOWING THE MEANDERINGS OF SAME, A DISTANCE OF 122 FEET, MORE OR LESS, TO A POINT WHICH BEARS SOUTH 50 DEGREES 44 MINUTES 55 SECONDS WEST FROM THE POINT OF BEGINNING; RUN THENCE NORTH 50 DEGREES 44 MINUTES 55 SECONDS EAST A DISTANCE OF 244 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

3. The Order Granting Relief from Stay is entered for the sole purpose of allowing Secured Creditor to exercise any and all *in rem* remedies against the property described above. Secured Creditor will not seek an *in personam* judgment against Debtor(s).

4. Secured Creditor is further granted relief in order to contact the Debtor(s) by telephone or written correspondence in order to discuss the possibility of a forbearance agreement, loan modification, refinance agreement or loan workout/loss mitigation agreement.

5. The Secured Creditor's request to waive the 14-day stay period pursuant to Bankruptcy Rule 4001(a)(4) is granted.

<center>###</center>

Attorney, Travis Bailey, is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.